UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS

MICHAEL STANLEY CLARK                             NO. 17-00005-BAJ-EWD

### RULING AND ORDER

On September 16, 2022, this matter came before the Court for an evidentiary hearing regarding Defendant's claim of ineffective assistance of counsel related to counsel's alleged failure to file a notice of appeal (NOA), the sole surviving claim set forth in Defendant's **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 42, the "2255 Motion")**. Having received and weighed the evidence, and having now considered the arguments of the parties, the Court finds that there is no merit to Defendant's claim that counsel "ignored" his request to file a NOA because, quite simply, Defendant never made any such request. As such, for the reasons stated below and those set forth in the Court's prior Ruling and Order of June 17, 2022 (Doc. 80, the "June 17 Order"), Defendant's Section 2255 Motion will be denied in all respects.

I. **RELEVANT BACKGROUND**

The Court's June 17 Order sets forth the relevant background and procedural history, and explains the disputed factual issue requiring the September 16 evidentiary hearing. In short, Defendant alleged in his 2255 Motion that after his March 8, 2018 sentencing hearing, his attorney "ignored" multiple requests to appeal

his six convictions and 300-month sentence. (Doc. 42 at p. 4). The Government responded by proffering an affidavit from Defendant's court-appointed counsel, Thomas Damico, in which Mr. Damico flatly denied Defendant's allegations, stating:

> Affiant [Mr. Damico] did not ignore a request by Clark or his father to file an appeal. Affiant was never asked to file one. Affiant, Clark and his father briefly discussed the possibilities of an appeal and Michael Clark chose not to proceed. The rationale of this decision was based on the fact that he previously waived his right to appeal a guideline sentence and further, that he actually benefitted from a variant sentence which resulted in a lower than recommended sentence. Once again, Affiant was never asked to file an appeal on Michael Clark's behalf.

(Doc. 59-2 at ¶ 1). In its June 17 Order, the Court determined that these conflicting accounts of the events following Defendant's sentencing required an evidentiary hearing to resolve whether, in fact, Defendant expressly instructed Mr. Damico to file a NOA—the dispositive evidentiary issue underpinning Defendant's claim.

Four witnesses testified at the September 16 hearing: Defendant,[1] Marvin "Ray" Clark (Defendant's father), and Seleta Rich Clark (Defendant's stepmother) testified for the defense; Mr. Damico testified for the Government. (Doc. 92). In sum and substance, Defendant testified that he was "dumbstruck" following his sentencing hearing, that he expected a sentence in the range of 200 months, and that

---

[1] By written motion, Defendant waived his right to appear in-person at the September 16 hearing, and instead appeared via video-conferencing from FCC Tucson, where he is currently imprisoned. (*See* Doc. 87, Doc. 90). Defendant's counsel, Government counsel, and all other witnesses appeared in-person. Prior to taking Defendant's testimony, the Court questioned Defendant and Defendant's counsel regarding Defendant's reasons for appearing remotely, and determined that Defendant knowingly and voluntarily waived his right to appear in-person. Despite appearing remotely, Defendant was afforded the opportunity to confer privately with his attorney at any point during the September 16 hearing.

2

his expectations were based on prior conversations with Mr. Damico. Significantly for present purposes, however, Defendant conceded that he never communicated with Mr. Damico after his sentencing hearing, and therefore never instructed Mr. Damico to file an appeal. Defendant attributed his post-sentencing failure to communicate with Mr. Damico to the fact that he was in protective custody.

Similarly, Mr. Clark (Defendant's father) testified that he spoke to Mr. Damico briefly *prior* to Defendant's sentencing, but that he was unable to communicate with Mr. Damico *after* sentencing. Mr. Clark testified that, after sentencing, he attempted to contact Mr. Damico by phone, and even appeared unannounced at Mr. Damico's law office, but that Mr. Damico was always unavailable.

For her part, Mrs. Clark testified that she never communicated with Mr. Damico—either before or after sentencing—but observed her husband attempting to contact Mr. Damico by phone multiple times.

Finally, Mr. Damico testified. Mr. Damico stated that he has practiced criminal law for 43 years—as a prosecutor and a defense attorney—that he is a founding member of this District's Criminal Justice Act (CJA) panel, and that he regularly accepts CJA appointments. Mr. Damico testified that he represented Defendant from arraignment through sentencing. Throughout the entirety of his representation of Defendant, Mr. Damico kept electronic records of all phone calls, written correspondences, and other communications with Defendant *and* Mr. Clark (as he

3

does for all of his clients). Further, Mr. Damico testified that he kept records of all *attempted* correspondences—*i.e.*, unanswered phone calls—through an electronic system that generated an email message each time Defendant or Mr. Clark called his office from their designated phone numbers.

Mr. Damico testified that at no point prior to *or* after the March 8, 2018 sentencing hearing did Defendant or Mr. Clark suggest to him an interest in pursuing an appeal, much less expressly instruct him to file a NOA. Mr. Damico corroborated his testimony by referencing his law office's electronic records, which show that Defendant and Mr. Clark made multiple phone calls to Mr. Damico prior to Defendant's sentencing hearing, but *none* after sentencing.

Mr. Damico's records further reflect that he received only two written correspondences from Defendant: the first correspondence was an email in early February 2018—one month prior to sentencing—the second was a letter in November 2018, well after the NOA window expired. Neither correspondence referenced an appeal in any way, or even suggested that Defendant wished to appeal but was unable to communicate with Mr. Damico.

Additionally, Mr. Damico testified that he had no record whatsoever of Mr. Clark having visited his office after the sentencing hearing, which was surprising to him (if such a visit actually occurred) because Mr. Damico would have been informed of such a visit, even if he was unavailable at the time.

4

Finally, Mr. Damico testified that it is his standard practice to briefly confer with his clients immediately after the sentencing hearing (before his clients are taken into custody) and that he expects that he did so here, but that he could not precisely recall what he discussed with Defendant. Mr. Damico stated, however, that he would have remembered if Defendant told him to file an appeal, *and* he would have honored Defendant's request even if an appeal would have been futile in light of Defendant's appeal waiver and below-guidelines sentence. Mr. Damico testified that he has previously filed appeals for clients even when, in his view, there are no appealable issues. In such instances, Mr. Damico's practice is to file an appellate brief consistent with the requirements set forth in *Anders v. California*, 386 U.S. 738 (1967).

After Mr. Damico concluded his testimony, the Court took the matter under advisement, and permitted the parties to submit post-hearing briefs.

On September 23, 2022, Defendant and the Government each timely submitted post-hearing briefs in support of their respective positions. (Doc. 92, Doc. 93). Notably, Defendant's brief is accompanied by two attachments: (1) a chart summarizing the contents of 47 recorded prison calls purportedly made by Defendant from West Baton Rouge Parish Prison during the month of March 2018, including two attempted calls to Mr. Damico's office on March 6 (two days before sentencing); and (2) the underlying audio recordings of the same. (Doc. 93-1, Doc. 93-2). These exhibits are not certified, transcribed, or otherwise authenticated by Defendant (or, for that matter, any call participant(s)). (*See id.*). Defendant asserts that these records show that during the

5

critical NOA window, Defendant and Mr. Clark "discussed ad nauseam the need to contact Mr. Damico and the need to file a notice of appeal." (Doc. 93 at p. 3).

## II. LAW AND ANALYSIS

### A. Standard

A habeas petitioner claiming ineffective assistance of counsel generally must meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires proof of counsel's deficient performance, *and* proof that counsel's performance prejudiced the defense. A variation of the *Strickland* standard applies, however, where the petitioner asserts that counsel disregarded a request to file an appeal, *even* when the petitioner previously *waived* his right to direct appeal:

> In such circumstances, if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver.

*United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The U.S. Supreme Court has recently affirmed this rule, stating that "where … an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed with no further showing from the defendant of the merits of his underlying claims." *Garza v. Idaho*, 139 S. Ct. 738, 750 (2019).

Thus, the dispositive question here is simply whether Mr. Damico disregarded a request to file an appeal on Defendant's behalf. The answer to this question, of course, hinges on whether Defendant (*or* Mr. Clark, on Defendant's behalf) actually

instructed Mr. Damico to file a NOA. And on this point, the evidentiary record is now clear—in fact, it is *unrebutted*. At the hearing, all witnesses testified that *nobody* instructed Mr. Damico to file a notice of appeal. Further, Defendant's purported phone records accompanying his post-hearing brief reinforce the point. Accepting these unauthenticated records for what appear to be—*i.e.*, Defendant's March 2018 prison calls—Defendant never even *attempted* to contact Mr. Damico after sentencing, during the critical NOA window, despite having ample time and opportunity to do so.

In sum, having failed to present any evidence that Defendant *or* Mr. Clark instructed Mr. Damico to file a NOA, Defendant cannot show that Mr. Damico performed deficiently, and Defendant's sole remaining ineffective assistance claim fails.[2] *See Garza*, 139 S. Ct. at 750; *Tapp*, 491 F.3d at 266.

### B. Certificate Of Appealability

Reasonable jurists would not debate the denial of Defendant's 2255 Motion, or the correctness of the Court's substantive rulings that Defendant has failed to make a substantial showing of the denial of a constitutional right (as set forth herein *and* in the Court's June 17 Order). Accordingly, Defendant will also be denied a certificate

---

[2] It is now clear that Defendant's real objection is that he was effectively *prevented* from instructing Mr. Damico to file a NOA, because he was in protective custody, and because his father's attempts to contact Mr. Damico were stymied. Even assuming that this is a cognizable variation of Defendant's claim under *Garza* and *Tapp*, it cannot succeed where, as here, the sum of the credible evidence establishes that Defendant *and* his father were each quite capable of contacting Mr. Damico, and did so multiple times in the months prior to Defendant's sentencing hearing, yet inexplicably did *not* contact Mr. Damico during the period when he allegedly should have filed the NOA.

of appealability. *See United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).

### III. CONCLUSION

In sum, for the reasons explained herein and in the Court's June 17 Order (Doc. 80), Defendant has failed to show that he is entitled to relief. Accordingly,

**IT IS ORDERED** that Defendant's **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 42)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's **Unopposed Motion To Waive Physical Presence (Doc. 89)** be and is hereby **TERMINATED AS MOOT**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant's related action No. 3:19-cr-00145-BAJ be and is hereby **TERMINATED** and **CLOSED** consistent with the denial of relief set forth herein.

Baton Rouge, Louisiana, this 28th day of September, 2022.

_____
**BRIAN A. JACKSON, JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**